2023 IL App (1st) 230595-U

FIRST DIVISION
November 27, 2023

No. 1-23-0595

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| JOSE ANTONIO COSSIO, JR., | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 2022 M 5000896 |
| | ) | |
| TONI PRECKWINKLE and the COOK COUNTY | ) | The Honorable |
| EMPLOYEES APPEALS BOARD, *et al.*, | ) | Eve M. Reilly, |
| | ) | Judge Presiding. |
| Defendants-Appellees. | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justices Lavin and Pucinski concurred in the judgment.

**ORDER**

*HELD*: Trial court's dismissal of plaintiff's claims based on findings they were time-barred and barred by *res judicata* affirmed where plaintiff has been relitigating the same cause of action in various venues since 2015.

¶ 1     Plaintiff-appellant Jose Antonio Cossio, Jr. (plaintiff) appeals, *pro se*, from the trial court's grant of a motion to dismiss filed by defendants-appellees Toni Preckwinkle and the Cook County Employees Appeals Board (Board), *et al.* (individually as named, or collectively as defendants), finding plaintiff's claims to be both time-barred and barred by *res*

*judicata*. Plaintiff contends that the trial court erred in holding *res judicata* applied, ignoring the continuing violation doctrine, and dismissing his case as time-barred. He asks that we reverse or vacate the court's judgment, remand for further hearings, and/or reinstate his employment. For the following reasons, we affirm.

¶ 2                                     BACKGROUND

¶ 3     This cause involves multiple lawsuits spanning many years filed by plaintiff, all involving one central issue: the termination of his employment with Cook County (County).

¶ 4     The record reveals that, while plaintiff was serving in the military, he was court martialed and found guilty of larceny, communicating a threat, identity theft, and use of a government computer for identity theft. He was sentenced in 2004 to a bad-conduct discharge, 10 month's confinement, and a fine. He served his sentence in a regional correctional facility and was released in 2005. That year, a separate military investigation revealed plaintiff had created a fraudulent website mimicking an official government website, and he was charged for crimes related thereto. This time, he entered into a pretrial agreement and pled guilty to conduct detrimental to good order and discipline in exchange for a sentence of time served.

¶ 5     In April 2013, plaintiff applied for a job with the County by filling out an online application which required him to create a profile. One of the profile questions asked the nature of his military discharge, and the available selections were "bad conduct discharge," "dishonorable discharge," "general discharge," "honorable discharge," "other than honorable discharge," and blank. Plaintiff selected "honorable discharge." Additionally, part of the employment application required him to submit a conditional employment affidavit regarding

any criminal history. It defined "conviction" as all convictions, regardless of whether it was in Illinois, another state, federal court, or the court of another country. Plaintiff stated in his application that he had no felony convictions.

¶ 6    Based on his application, plaintiff was hired by the County's Bureau of Administration as a fleet manager. Sometime later, the County discovered the falsehoods in his application and referred the matter to the Cook County Office of the Independent Inspector General (IG). Following an investigation, plaintiff was terminated from his employment for making misrepresentations and omissions in his employment application documents and for failing to cooperate with the IG during the investigation in violation of Cook County Ordinance section 2-285(a) (Cook County Code of Ordinances § 2-285(a) (amended Oct. 2, 2012)).

¶ 7    In 2015, plaintiff appealed his termination to the Board, which affirmed the decision following a hearing. Plaintiff then sought administrative review of that decision in the trial court. On February 10, 2016, following a hearing, the trial court issued an order upholding the Board's decision, finding that it was "not against the manifest weight of the evidence, arbitrary or contrary to law." It noted the evidence regarding his false statements remained uncontroverted and he had failed to disclose "highly relevant information" to the IG. Plaintiff appealed and our Court affirmed, likewise finding that the Board's decision was not against the manifest weight of the evidence. See *Cossio v. Cook County*, 2017 IL App (1st) 160654-U.

¶ 8    On September 26, 2018, plaintiff filed a petition in the trial court pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2018)), seeking to

vacate the decision affirming his termination. He alleged that, during the Board proceedings, the County made a discovery violation by failing to disclose an email detailing how it had come to learn of his falsehoods, which he insisted was relevant and would have assisted him in defending the claims against him. In response, the County filed a motion to dismiss. First, it noted that plaintiff's petition was untimely, as it was filed more than two years after the trial court's order was issued. It further noted that the only exception to the two-year time frame was for plaintiff to establish that the County fraudulently misstated or concealed a material fact by failing to disclose the email. The County argued he could not meet this requirement, as the email established only that the County was made aware of his military convictions—something he, himself, has known since before his discharge.

¶ 9        Following a hearing, the trial court granted the County's motion to dismiss. At the outset, it declared that plaintiff's petition was untimely, as it was filed on September 26, 2018, "clearly beyond the two years" afforded him under section 2-1401 to seek relief from the court's February 10, 2016 order. The court then reminded the parties that the time limit may be tolled if plaintiff could establish that the email at issue comprised relevant and material information and that the County had fraudulently concealed it during discovery. In examining the facts presented, the court concluded that plaintiff had not satisfied the fraudulent concealment exception. It determined that the email had no impact on, and did not change, the unrebutted evidence that he was convicted of criminal conduct and dishonorably discharged from the military, he did not disclose that information and instead made false statements on his employment application, and he misled and failed to cooperate

with the IG during the ensuing investigation. Accordingly, and reiterating that the email was "not material to" his cause, the court denied his section 2-1401 petition. It closed the hearing by informing plaintiff he had the right to appeal the decision.

¶ 10    Plaintiff, however, did not appeal that decision. Instead, on January 14, 2019, he filed a lawsuit in federal court, asserting various constitutional violations and state law tort claims against the County and IG related to the same discovery violation he alleged in his petition, namely, their failure to disclose and the improper withholding of the (same) email. The district court dismissed plaintiff's claims with prejudice as barred by *res judicata*, noting he had made the same fraudulent concealment argument in the state trial court, and that court had already determined his petition was untimely and the alleged discovery violation did not rise to the level of fraud necessary to excuse that untimeliness.

¶ 11    Plaintiff appealed the federal district court decision to the United States Court of Appeals for the Seventh Circuit, which issued a written order in affirmance. In brief, it found, just as the district court, that plaintiff's claims against the County and IG in federal court were "the same as the ones he lost against them in state court" and, accordingly, "dismissal of these claims in federal court on *res judicata* grounds was proper."

¶ 12    In March 2021, plaintiff filed another lawsuit against defendants in the circuit court, asserting counts of negligent misrepresentation and common law fraud and seeking declaratory judgment and monetary relief. He claimed that the Board's 2015 decision upholding his discharge should be overturned because he just learned that its members may not have been properly appointed to sit on the Board at the time of his hearing. While that

suit was pending, he filed another section 2-1401 petition in the circuit court to vacate the prior judgment in his administrative review case on the same basis. Plaintiff alleged that he did not realize he could assert this as an issue and insisted that he now be allowed to litigate this theory, as it could render the judgment void. The trial court consolidated plaintiff's two pending suits and, in January 2022, dismissed them. After examining the Board's authority to appoint its members and fill its vacancies, it held that "there is no question as to the validity of any of the [Board] members on the panel at the time of [p]laintiff's hearing" and, thus, he failed to state a claim that the Board's decision was void.

¶ 13    In February 2022, plaintiff filed the instant lawsuit at issue in this appeal. Once again, he challenged his discharge and the Board's 2015 decision affirming it, this time alleging a different discovery violation. He argued that, while preparing for another case, he now discovered that the IG had issued a subpoena in a different case in 2015, which he stated "appear[ed] to be an undisclosed investigation into [his] TOR/VPN [computer] access." Plaintiff did not clarify that the subpoena was at all relevant to the investigation that had led to his discharge. Rather, he stated only that defendants had failed to produce information related to this subpoena during the 2015 Board hearing and that this "deprived [him] of the opportunity to impeach" the IG and "fraudulently induced [him] into a Due Process waiver." His complaint alleged counts for mandamus, spoliation of evidence and declaratory relief, and he again sought re-employment with the County, backpay, and an order from the court declaring the Board's termination of his employment null and void. Defendants filed a motion to dismiss on multiple grounds, including that the complaint was untimely, barred by

*res judicata*, failed to state a viable claim for mandamus, and tort immunity applied to bar any claim of spoliation.[1]

¶ 14    The trial court granted defendants' motion to dismiss. First, it found that plaintiff's complaint was time-barred pursuant to section 2-619(a)(5) of the Code (735 ILCS 5/2-619(a)(5) (West 2018)). Since no specific statute of limitations applied to his claims, the court turned to section 13-205 of the Code and applied the five-year limitation for "all civil actions not provided for." 735 ILCS 5/13-205 (West 2018). Because plaintiff initiated his suit in February 2022 for claims related to the Board hearing of 2015, it clearly fell outside the limitations period and was time-barred. The court further found any assertion of fraudulent concealment would not toll the period, as plaintiff did not plead or prove it. He did not allege the subpoena regarding VPN access had anything to do with his discharge, which dealt was his failure to properly disclose his military convictions and his refusal to cooperate with the IG—completely unrelated matters. Second, the court found that plaintiff's suit was barred by *res judicata* under section 2-619(a)(4) of the Code (735 ILCS 5/2-619(a)(4) (West 2018)). After reviewing the procedural history of this cause and all the others plaintiff had filed in relation to his discharge, as well as the elements of *res judicata*, the court specifically found that the doctrine applied "because there was a final judgment on the merits rendered by a court of competent jurisdiction, there was identity of cause of action, and there was an identity of parties or their privies" between the instant cause and plaintiff's

---

[1] We note for the record that during the pendency of this litigation, plaintiff filed yet another section 2-1401 petition, his third, again attacking the Board's 2015 order, citing discovery violations and demanding he be reinstated to his employment and paid back wages from 2014.

previous two circuit court cases, as well as his federal case wherein he challenged his termination.  Accordingly, the court dismissed plaintiff's complaint.

¶ 15                                    ANALYSIS

¶ 16        On appeal, plaintiff contends that the trial court erred in dismissing his cause.  First, he claims that *res judicata* does not apply because he presented an "unrelated discovery violation" that was "discovered only recently" and was distinct from the violation he asserted previously.  Next, he claims that even assuming the asserted discovery violations were related and therefore triggered *res judicata*, the "continuing violations doctrine" should have been employed.  Finally, he claims his cause should not have been dismissed as time-barred because he asserted "deception and that the investigations were unrelated to each other."

¶ 17        The trial court provided several bases in support of its dismissal of plaintiff's complaint.  However, we only need one, deemed dispositive, to affirm this matter upon review.  See *Ambrosius v. Chicago Athletic Clubs, LLC*, 2021 IL App (1st) 200893, ¶ 21.  Because we dispositively conclude plaintiff's claims are time barred, we address that challenge first.

¶ 18        As noted, the trial court granted defendants' motion to dismiss based on section 2-619(a)(5) of the Code, which allows dismissal of a cause of action if it was not commenced within the time limited by law.  See 735 ILCS 5/2-619(a)(5) (West 2018).  We review such dismissals *de novo* (see *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008)); in doing so, we perform the same analysis that the trial court would perform (see *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43).  Again, we may affirm dismissal on any basis supported by the record.  See *Ambrosius*, 2021 IL App (1st) 200893, ¶ 21.

Moreover, when statutory provisions pursuant to which relief is sought in a civil claim do not specify the statute of limitations, section 13-205 of the Code acts as a catch-all provision. It operates to set a five-year period for such claims. See 735 ILCS 5/13-205 (West 2018) ("[A]ll civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued"). Statutes of limitations "discourage the presentation of stale claims and * * * encourage diligence in the bringing of actions." *Sundance Homes, Inc. v. County of Du Page*, 195 Ill. 2d 257, 265-66 (2001).

¶ 19        Here, plaintiff's instant complaint (again) challenged the Board's 2015 decision upholding his discharge. He sought mandamus and declaratory relief pursuant to Cook County Ordinance Chapter 44-50(a) and 44-50(b). As these ordinances do not provide for a specific statute of limitations, section 13-205 necessarily applied. This afforded plaintiff, then, a five-year limitations period in which to file the instant suit. However, the record is clear that he filed his complaint, the one that is the subject of this appeal, on February 22, 2022. This was more than five years after his discharge and the Board's 2015 decision upholding it. Accordingly, his complaint was untimely and the court properly dismissed it.

¶ 20        Plaintiff insists that this period should be tolled in his cause for two reasons. He cites "the discovery rule" and claims that he only became aware of a new discovery violation, the subpoena, in 2022, while preparing for a different case. Moreover, he claims that, contrary to the trial court's finding, he properly pled fraudulent concealment on the part of defendants. However, based on the facts before us, neither of these claims has merit.

¶ 21    First, the discovery rule delays the commencement of an applicable statute of limitations "until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 249 (1994). Metaphorically, it postpones the start of the legal clock on a claim. When the rule applies, the relevant inquiries are "whether and when the plaintiff develops 'a reasonable belief that the injury was caused by wrongful conduct, thereby creating an obligation to inquire further on that issue.' " *Shrock v. Ungaretti & Harris Ltd.*, 2019 IL App (1st) 181698, ¶ 49 (quoting *Dancor International, Ltd. v. Friedman, Goldberg & Mintz*, 288 Ill. App. 3d 666, 672 (1997)). It does not matter whether the plaintiff knows or suspects who the wrongdoer or what the wrong actually is. See *Shrock*, 2019 IL App (1st) 181698, ¶ 50; accord *Scheinblum v Schain Banks Kenny & Schwartz, Ltd*., 2021 IL App (1st) 200798, ¶ 25. Instead, once he has the burden to inquire further into the existence of a cause of action via this reasonable belief, " 'a statute of limitations may run despite the *lack* of actual knowledge' " on his part. (Emphasis in original.) *Scheinblum*, 2021 IL App (1st) 200798, ¶ 25 (quoting *SK Partners I, LP v. Metro Consultants, Inc.*, 408 Ill. App. 3d 127, 130 (2011)).

¶ 22    Our courts have made clear that the discovery rule does not apply in cases where the injury at issue is the result of a "single traumatic event," namely, an injury that is immediate and caused by an external force. See *Ericksen v. Village of Willow Springs*, 279 Ill. App. 3d 210, 216 (1995). This is because, in such instances, the time of the injury is obvious and, thus, the moment the plaintiff knows or should know of his right to sue is also obvious. See *Walters v. Mario Memorial Hospital*, 217 Ill. App. 3d 744, 747 (1991) (the more obvious the

injury, the more easily a plaintiff should be able to determine its cause). A plain example of such a case is termination of employment. See *Ericksen*, 279 Ill. App. 3d at 216 (discovery rule did not apply in cause where the plaintiff was terminated from employment as patrol officer, since this single event put him on immediate notice that the termination might have been wrongfully caused). In this type of case, a plaintiff is deemed to be on immediate notice of the wrongful nature of the injury and under a duty to promptly investigate that injury. See *Ericksen*, 279 Ill. App. 3d at 215 (this balances the increased difficulty in proving a case that results from the passage of time with the hardship to a plaintiff who was not aware of his right to sue).

¶ 23    In the case at bar, plaintiff's injury, which he has consistently alleged from the outset of all his litigation, is that he was wrongfully terminated from his employment. As we have just noted, our courts have recognized that this fits the prime example of a single traumatic event. See *Ericksen*, 279 Ill. App. 3d at 216. Simply put, then, and contrary to plaintiff's assertion, the discovery rule does not apply here to toll the statute of limitations.

¶ 24    In addition, plaintiff's insistence that he only "recently discovered" that the IG had issued a subpoena in a different case does not invoke the discovery rule in this case. Again, plaintiff was fired in 2014, the Board upheld his termination in 2015, and he sought review in the trial court in 2016. Even affording him the last of these dates, he knew or should have known of his injury in 2016 and from that point, he was obligated to inquire further into it at that time. Yet, he did not file the instant claim until 2022. Pursuant to section 13-205, the five-year statute of limitations is long expired.

¶ 25    Furthermore, we cannot help but note that plaintiff admits the subpoena he claims the Board failed to disclose, which he states deals with his VPN access, was issued in, and involved, a different case and not his employment termination case. In fact, he never clarified for the trial court, and does not do so even now, how this subpoena is at all relevant to his providing false information on his employment application regarding his military discharge and failing to cooperate with the IG's investigation—the bases of his discharge. Instead, as he explains it in his brief, as well as in his underlying complaint, he supposedly discovered "a subpoena online that indicated another IG investigation involving him" and that this "appears to be an undisclosed investigation into [his] TOR/VPN access which may contain impeachment evidence." However, that is all he says, and the alleged subpoena is not in the record before us.[2] Even were it in the record, the fact, which he, himself, admits, remains: it was issued (if at all) in another case dealing with his computer access, not his termination case. Thus, we fail to see how this subpoena is a "new discovery" that would somehow toll the limitations period here. Accordingly, even if the discovery rule applied (which it does not), we wholly fail to see how his new assertion and his instant cause would even be linked for it to be operable.

¶ 26    Second, we similarly find, again contrary to plaintiff's insistence, that the fraudulent concealment exception also fails to toll the limitations period. Like the discovery rule, this

---

[2] When discussing the subpoena and it content, plaintiff makes one citation in his brief to a page in the record on appeal. We examined that page, the various pages before and after, and the record as a whole and we have not found it. Additionally, we examined his complaint as contained in the record, where, again, he refers to the subpoena as being attached as an "exhibit." However, as presented in the record, no exhibits are attached to his complaint.

exception tolls a limitations period. See *Doe v. Boy Scouts of America*, 2016 IL App (1st) 152406, ¶ 80; *Wisniewski v. Diocese of Bellville*, 406 Ill. App. 3d 1119, 1154 (2011) (this is codified in section 13-215 of the Code (735 ILCS 5/13-215 (West 2018)). It, too, stops the legal clock. It consists of affirmative acts or representations on the part of a defendant which are meant to lull a plaintiff into delaying the filing of his claim or to prevent him from discovering it. See *Doe*, 2016 IL App (1st) 152406, ¶ 81; accord *Wisniewski*, 406 Ill. App. 3d at 1154. Like the discovery rule, the burden rests with a plaintiff to plead and prove it. This requires he both allege and present evidence that the defendant made misrepresentations or performed acts which were known to be false with the intent to deceive him and upon which he relied to his detriment so that he would not file a claim. See *Doe*, 2016 IL App (1st) 152406, ¶ 81; accord *Wisniewski*, 406 Ill. App. 3d at 1154. However, "mere silence on the part of the defendant and a failure by the plaintiff to learn of the cause of action are not enough to establish fraudulent concealment." *Wisniewski*, 406 Ill. App. 3d at 1154.

¶ 27    In the instant cause, plaintiff did not plead or prove fraudulent concealment. As the court noted, plaintiff did not allege that the subpoena at issue, which dealt with his VPN access, had anything to do with his termination, which dealt was his failure to properly disclose his military convictions and his refusal to cooperate with the IG. Again, these are completely unrelated matters, and even now on appeal, he fails to demonstrate how they are related. Additionally, he does not allege what actions defendants took intending to deceive him and upon which he detrimentally relied. The closest he comes is an allegation that they failed to disclose it to him in 2015 and he could have used this subpoena to impeach the testimony of

the IG investigator, which, in his characterization, was the only evidence used to terminate him; he also alleges that, to his detriment, he waived his due process rights. However, this is hardly enough to establish fraudulent concealment. First, as he fails to describe anything more about what due process rights he allegedly waived, we simply do not understand his assertion of detrimental reliance. The record is clear that he received every opportunity to argue against his termination before the Board and to present his cause in the trial court under administrative review--and the appellate court, and the federal district court, and the federal appeals court. Moreover, and again, plaintiff knew of his termination the moment it happened. There was no "failure" on his part to learn of the cause of action; he knew exactly what it was and when it happened. Thus, it was incumbent upon him to realize it and pursue it, which he clearly did. Also, his attempt to characterize the evidence against him as only consisting of the testimony of the IG investigator is absurd. The record in this matter undeniably shows that he was terminated for falsifying information in his employment application and for failing to cooperate with the IG during the investigation. His past military criminal records and his employment application information were at the center of the evidence in the cause. Even if it could somehow be said that the IG's testimony was the only evidence against him, the fact remains that he is now attempting to hang his hat on a subpoena about his VPN access he says he discovered while preparing for another case that has nothing to do with his termination case. And, critically, he does not allege that defendants somehow made misrepresentations about it or hid it in order to deceive him into

14

not filing a claim. Rather, he most certainly filed a claim; he simply did not prevail. None of this constitutes fraudulent concealment which would toll the limitations period.

¶ 28    Ultimately, then, as neither the discovery rule nor the fraudulent concealment exception apply to toll the applicable limitations period, we find, just as the trial court, that plaintiff's cause of action was time-barred and, therefore, properly dismissed.

¶ 29    Although this finding is dispositive, we opt to take a moment to address plaintiff's claim regarding *res judicata* since, in his eyes, as a *pro se* litigant, that constituted his primary argument in his brief before this Court. While our decision up to now has focused on timeliness, his first claim on appeal was that the trial court erred in applying *res judicata* to bar his cause of action. However, precisely because our finding regarding timeliness is dispositive, our discussion with respect to *res judicata* need only be brief. We include it here only for his sake which, in turn, also makes our record more complete.

¶ 30    We begin by stating that, even were it not true (contrary to what we have already determined) that plaintiff's cause of action was time-barred, and even if it could somehow be concluded (which it cannot) that it was timely (which it was not), dismissal of it was still proper based on *res judicata*. In other words, and again contrary to his assertion, the trial court did not err in holding that *res judicata* (also) barred his cause of action.

¶ 31    Pursuant to this doctrine, when a court of competent jurisdiction renders a final judgment on the merits of a cause of action, that judgment becomes conclusive as to the rights of the parties and their privies to the suit and, thus, acts as an absolute bar to any subsequent action between the same parties or their privies involving the same claim, demand, or cause of

action. See *Cooney v. Rossiter*, 2012 IL 113227, ¶ 18; accord *Agolf, LLC v. Village of Arlington Heights*, 409 Ill. App. 3d 211, 218 (2011) (citing *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 389 (2001)). At its core, this equitable doctrine prevents multiple lawsuits between the same parties where the facts and issues presented are the same. See *Agolf*, 409 Ill. App. 3d at 218 (citing *Leow v. A&B Freight Line, Inc.*, 175 Ill. 2d 176, 180 (1997), and *Green v. Northwest Community Hospital*, 401 Ill. App. 3d 152, 154 (2010)). It applies to bar such subsequent actions when all three of its elements exist, namely: " '(1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies.' " *Agolf*, 409 Ill. App. 3d at 218 (quoting *Nowak*, 197 Ill. 2d at 390). Once these elements are met, *res judicata* extends to bar all matters that were offered to sustain or defeat the claim or demand, as well as to any and all other matters which may have or could have been offered for that purpose. See *Cooney*, 2012 IL 113227, ¶ 18; accord *Agolf*, 409 Ill. App. 3d at 218 (citing *Nowak*, 197 Ill. 2d at 389). "Accordingly, while it is true that every plaintiff is entitled to his day in court and *res judicata* should not be applied to create fundamental unfairness, the critical nature of this doctrine operates to prevent repetitive lawsuits and protects parties from being forced to bear the burden of relitigating essentially the same claim over and over." *Agolf*, 409 Ill. App. 3d at 219 (internal citations omitted).

¶ 32    *Res judicata*'s three elements have undeniably been met here so as to bar plaintiff's complaint. As to the first and third elements, a final judgment on the merits and an identity of the parties, these are not reasonably in dispute and, in fact, plaintiff does not even contest

16

them on appeal. First, as the record demonstrates, courts of competent jurisdiction have rendered final judgments related to the 2015 Board hearing not once, not twice, but several times. The first was in February 2016 when the trial court upheld the Board's decision affirming his discharge pursuant to administrative review. He then brought a section 2-1401 petition in September 2018 urging that decision be overturned because the County failed to disclose relevant information (*i.e.*, a certain email). After briefing and argument, the court dismissed his petition, finding he had not established a discovery violation. He brought the same claim before the federal district court, which dismissed it in 2019. And, he raised the same claim once again, this time before the Seventh Circuit Court of Appeals, which affirmed the district court's dismissal in 2020, specifically stating that the assertions he was making were "the same as the ones he lost against [defendants] in state court." Moreover, the same parties and their privies are clearly involved in the lawsuits. Plaintiff and the County have both been named parties in the litigation involving his discharge since its inception. And, defendant Board (which was part of the administrative review of plaintiff's discharge) and defendant Preckwinkle (in her official capacity as Cook County Board President), who plaintiff now names, clearly stand in privity with the County. See *State Farm Fire & Cas. Co. v. John J. Rickhoff Sheet Metal Co.*, 394 Ill. App. 3d 548, 559-60 (2009) (privity exists when parties adequately represent the same legal interest; persons or entities, such as officials or agencies, who are not parties to an action but who are connected via their interests or have a specified relationship to a named party and are affected by the judgment with reference to interests involved in the action have privity).

17

¶ 33     This leaves the second element of *res judicata*: identity of cause of action. Plaintiff repeatedly argues that this element is missing because, since the prior discovery violation he asserted involved the withholding of an email whereas the "newly discovered violation" involves the withholding of a subpoena, these are inherently different transactions or incidents and, thus, *res judicata* cannot apply. This is wholly incorrect. Separate claims are considered the same cause of action under *res judicata* if they arise from a single group of operative facts. See *Agolf*, 409 Ill. App. 3d at 219 (citing *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 314 (1998), and *Lane v. Kalcheim*, 394 Ill. App. 3d 324, 332 (2009), and stating that this is known as the transactional test). This applies regardless of whether different legal theories, evidence or remedies are asserted. See *Agolf*, 409 Ill. App. 3d at 219; accord *Cooney*, 2012 IL 113227, ¶¶ 21-22 (separate claims, even if there is not a substantial overlap of evidence among them and even if they assert different theories of relief, are still considered part of the same cause of action for the purposes of *res judicata* if they arise from a single group of operative facts). Again, *res judicata* bars all matters that were offered to sustain or defeat the initial claim or demand, as well as any and all other matters which may have or could have been offered for that purpose. See *Cooney*, 2012 IL 113227, ¶ 18; accord *Agolf*, 409 Ill. App. 3d at 218, citing *Nowak*, 197 Ill. 2d at 389.

¶ 34     There is clearly an identity of cause of action here. Plaintiff is seeking the same relief from the same group of operative facts as his prior litigation, challenging again the grounds for his discharge and the 2015 Board decision that upheld it. He is merely asserting a different theory of relief or, more appropriately perhaps, a difference in evidence.

Previously, he alleged the withholding of an email rendered his termination void, and now he alleges the nondisclosure of a subpoena regarding VPN access in another matter renders his termination void. Yet, these allegations arise from a single group of operative facts, *i.e.*, the same "transaction:" his termination for his failure to properly disclose his military convictions and his refusal to cooperate with the IG, and the hearing before the Board which upheld his termination. This has not changed at any point since the inception of litigation. Therefore, as his claims arise from a single group of operative facts, identity of cause of action clearly exists.

¶ 35      With all three elements met, then, *res judicata* properly operates to bar plaintiff's claim and, thus, there was no error upon the trial court in reaching that determination.

¶ 36      In a last-ditch attempt to save his appeal, plaintiff asserts that the continuing violations doctrine renders the application of *res judicata* improper. However, that doctrine, which can operate to toll a limitations period, requires the existence of a continuing tort, namely, one that involves a continuing or repeated injury, or continued unlawful acts and conduct. See *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 278-79 (2003). Specifically, a single overt act from which subsequent damages may flow is not a continuing tort. See *Feltmeier*, 207 Ill. 2d at 279 (continual ill effects from an initial violation does not constitute a continuing tort). As we discussed earlier, the one-time act of termination from employment is a single event, not a continuous tort. Therefore, we can plainly state that the continuing violations doctrine does not apply.

¶ 37    Ultimately, we have thoroughly concluded that plaintiff's claim was properly dismissed as time-barred and, even were it not so, the trial court's finding that, alternatively, *res judicata* operates to bar it, was also proper.  Having addressed all the claims raised in his *pro se* brief, this ends our review.

¶ 38                                    CONCLUSION

¶ 39    For all the foregoing reasons, we affirm the judgment of the trial court.

¶ 40    Affirmed.