Order filed June 6, 2025.          2025 IL App (5th) 240425
Motion to publish granted
June 26, 2025.                      NO. 5-24-0425

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| BAXTER GRACE, on Behalf of Himself and | ) | Appeal from the |
| All Others Similarly Situated, | ) | Circuit Court of |
| | ) | Madison County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 11-L-1304 |
| | ) | |
| THE CITY OF EDWARDSVILLE, | ) | Honorable |
| | ) | Ronald S. Motil, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE McHANEY delivered the judgment of the court, with opinion.
Justices Moore and Boie[*] concurred in the judgment and opinion.

**OPINION**

¶ 1     The plaintiff, Baxter Grace (Grace),[1] filed a class action complaint against the defendant,

the City of Edwardsville (Edwardsville), challenging the constitutionality of Edwardsville's

impoundment ordinance, which requires violators to pay an administrative processing fee when

their vehicle is used in the commission of certain offenses. The trial court dismissed the complaint

on October 25, 2013, and Grace appealed. On May 2, 2015, this court reversed and remanded,

_____

[*]This case was originally assigned to Justice Welch. For administrative reasons Justice Boie has
been substituted on the panel for Justice Welch. Justice Boie has read the briefs in this case and has listened
to the recording of oral argument.

[1]The original class action complaint against Edwardsville was filed by Allan Lewis, who later
determined that he would not be able to continue to serve as the class representative. Baxter Grace was
substituted as the class representative on May 10, 2012. Throughout this opinion the plaintiff will be
referred to as Grace.

1

finding that Edwardsville failed to allege affirmative matter that would preclude the case from going forward, and assuming that the allegations of Grace's complaint were true, the complaint stated a basis upon which relief could be granted. *Carter v. City of Alton*, 2015 IL App (5th) 130544. Thereafter, Grace amended his complaint four times. Edwardsville filed a motion to dismiss and to strike Grace's final amended complaint on December 8, 2022. The trial court granted Edwardsville's motion to dismiss on March 13, 2024. Grace appeals from the dismissal of his complaint. For the reasons that follow, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3                                    A. The Ordinance

¶ 4     In 2009, Edwardsville enacted article VII, which added provisions to the Edwardsville Code of Ordinances for the impoundment of vehicles. The ordinances provided that if an operator uses a motor vehicle with the express or implied permission of the owner of record and drives "under the influence of alcohol[,] other drug or drugs, intoxicating compounds, in violation of 625 ILCS 5/11-501" the motor vehicle "shall be subject to tow and impoundment by the city, and the owner of record of said vehicle shall be liable to the city for an administrative processing fee of $300.00 in addition to any towing and storage fees." Edwardsville Code of Ordinances § 114-411(a)(2) (eff. May 4, 2009).

¶ 5     Section 114-413(b) of the Edwardsville Code of Ordinances sets out the procedure for the owner of an impounded vehicle to secure its release:

> "An owner may secure release of an impounded vehicle pending completion of the hearings provided for in section 114-414 by posting a bond of cash, money order, certified check, with the Edwardsville Police Department in the amount of $300.00 and accrued towing and storing charges. The city police department shall hold the cash bond,

2

and accrued towing and storage charges, in escrow until such time as the hearing is completed in conformance with section 114-414." *Id.* § 114-413(b).

¶ 6 Edwardsville requires each owner of an impounded vehicle to participate in a hearing. Edwardsville Code of Ordinances section 114-414 states:

"Within ten days after a vehicle is towed/impounded pursuant to this article, the city shall notify the owner of record by certified mail, return receipt request, at the address of the owner as it appears in the records of the secretary of state, of the date, time, and location of a hearing that will be conducted pursuant to this section. The hearing shall be conducted by a hearing officer designated by the city administrator. The owner will appear at the plea hearing and admit or deny whether there was cause to tow and impound the vehicle for those violations ***. If the owner denies that there was cause to impound the car for violation specific the hearing officer shall set a hearing date no later than 45 days from the date the vehicle was impounded. All interested persons shall be given an opportunity to be heard at the hearing. *** If, after the hearing, the hearing officer determines by a preponderance of the evidence that the vehicle was used in connection with a violation set forth in this section the hearing officer shall enter an order finding the owner of the vehicle civilly liable to the city for an administrative fee of $300.00. *** If the hearing officer enters an order finding the owner of record liable to the city for the administrative fee any vehicle still impounded shall continue to be impounded until the owner pays the administrative fee to the city plus all applicable towing and storage charges to the tow operator. *** If the hearing officer finds by [the] preponderance of the evidence that the vehicle was not used in connection with the violation set forth in section 114-411

3

the hearing officer shall order the immediate return of the owner's vehicle or cash bond without towing or impounding fees." *Id.* § 114-414.

¶ 7                           B. Procedural Background

¶ 8      On December 6, 2011, Grace filed his complaint against Edwardsville alleging that he was arrested for DUI, that his car was towed and impounded pursuant to Edwardsville's ordinance, and that he was required to pay the mandated administrative fee. He challenged the administrative fee alleging that the "tow release fees" require only a minimal amount of time and expense by Edwardsville "requiring only the Defendant['s] Police Department employees write a receipt for payment" of the fees. He alleged that the fees charged bore no reasonable relationship to the stated purposes of the ordinance and thus violated principles of substantive due process. On June 1, 2012, the trial court entered an order directing Grace to state if he was challenging the ordinance facially or as applied. In response, Grace filed his amended complaint on July 31, 2012, to more specifically allege a facial challenge to the constitutionality of Edwardsville's ordinance.

¶ 9      Edwardsville filed its motion to dismiss and/or strike Grace's complaint on October 24, 2012, pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2012)). The motion to dismiss was filed pursuant to section 2-619 of the Code (*id.* § 2-619) and the motion to strike was filed pursuant to section 2-615 of the Code (*id.* § 2-615).

¶ 10     On October 25, 2013, the trial court granted Edwardsville's motion to dismiss explaining that substantive due process does not stop a municipality from imposing a civil penalty for using a vehicle or allowing a vehicle to be used in the commission of certain offenses. In dismissing the amended complaint, the trial court heavily relied upon *People v. Ratliff*, 282 Ill. App. 3d 707, 713 (1996) (where the appellate court found that a $500 impoundment charge labeled as a fine,

4

constituted a fee because it was a "reasonable proxy for the likely actual administrative costs incurred").

¶ 11    Grace appealed the dismissal of his amended complaint to this court. We reversed and remanded stating that the trial court must take the allegations in the complaint as true; that Grace alleged facts that could potentially lead to a legal conclusion that the fees imposed by Edwardsville's ordinance violate substantive due process; and that he had not yet had an opportunity to fully conduct discovery. *Carter*, 2015 IL App (5th) 130544, ¶¶ 45, 48.

¶ 12    Grace filed the final version of his complaint on November 7, 2022. On December 8, 2022, Edwardsville filed its motion to dismiss and strike the amended complaint. On March 13, 2024, the trial court granted the motion to dismiss. Grace filed his notice of appeal from the court's March 13, 2024, dismissal on March 25, 2024.

¶ 13                                    II. ANALYSIS

¶ 14    Edwardsville filed its motion to dismiss and strike Grace's fourth amended class action complaint pursuant to section 2-619.1 of the Code  (735 ILCS 5/2-619.1 (West 2020)). The motion to dismiss was filed pursuant to section 2-619 of the Code (*id.* § 2-619) and the motion to strike was filed pursuant to section 2-615 of the Code (*id.* § 2-615).

¶ 15    Section 2-619.1 allows a party to combine a section 2-615 motion to dismiss based upon pleadings (*id.* § 2-615) with a section 2-619 motion to dismiss based upon certain defects or defenses (*id.* § 2-619), and/or a motion for summary judgment (*id.* § 2-1005). On appeal, a trial court's dismissal of a complaint pursuant to section 2-619.1 is reviewed *de novo*. *Madison County v. Illinois State Board of Elections*, 2022 IL App (4th) 220169, ¶ 42 (citing *Morris v. Harvey Cycle & Camper, Inc.*, 392 Ill. App. 3d 399, 402, (2009)). The appellate court "may affirm the dismissal

on any basis supported by the record." *Id.* (citing *Stoll v. United Way of Champaign County, Illinois, Inc.*, 378 Ill. App. 3d 1048, 1051 (2008)).

¶ 16    On appeal, Grace argues that the trial court erred in dismissing his complaint because Edwardsville's administrative fee was not rationally related to a legitimate legislative purpose, that Edwardsville's tow fee ordinance violated his substantive due process rights, that the voluntary payment doctrine did not bar him from seeking a refund of the fees he paid, and that the law of the case doctrine should have precluded the court's consideration of Edwardsville's motion to dismiss.

¶ 17                                A. Facial Challenge

¶ 18    Grace does not argue that the ordinance impacts his fundamental rights. Thus, the proper test for a substantive due process claim is the rational basis test. *People v. Pepitone*, 2018 IL 122034, ¶ 14 (quoting *People v. Rizzo*, 2016 IL 118569, ¶ 45). Municipal ordinances—just like statutes—are presumed valid. *City of Chicago v. Pooh Bah Enterprises, Inc.*, 224 Ill. 2d 390, 406 (2006). Thus, courts must uphold the constitutionality of ordinances if it is reasonably possible to do so. *Id.*

¶ 19    The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature's intent. *People v. Jones*, 223 Ill. 2d 569, 580 (2006). If the language of the statute is clear and unambiguous, courts must not resort to aids of statutory construction. *Id.* at 580-81. The ordinance "will pass constitutional muster if it is rationally related to a legitimate governmental interest and is not arbitrary or discriminatory." *Leehy v. City of Carbondale*, 2023 IL App (5th) 220542, ¶ 48 (citing *Carter*, 2015 IL App (5th) 130544, ¶ 19).

¶ 20    "If there is any conceivable basis for determining that the statute is rationally related to a legitimate state interest, the law must be upheld." *People v. Gray*, 2017 IL 120958, ¶ 61 (citing *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 126 (2004); *People ex rel. Lumpkin v. Cassidy*,

6

184 Ill. 2d 117, 124 (1998)). To apply the rational basis test, "a court must first ascertain the purpose of the statute to determine whether the statute's provisions reasonably implement that purpose." *Id.* ¶ 62 (citing *In re M.A.*, 2015 IL 118049, ¶ 55). As the Illinois Supreme Court stated:

> "In applying the rational basis test, we must identify the public interest that the statute was intended to protect, determine whether the statute bears a reasonable relationship to that interest, and verify whether the means chosen to protect that interest are reasonable. [Citation.] As long as there is a reasonably conceivable set of facts showing that the legislation is rational, it must be upheld. [Citation.] Whether the statute is wise or sets forth the best means to achieve the desired result are matters for the legislature, not the courts." *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 29.

¶ 21    "A facial challenge to the constitutionality of a legislative enactment is the most difficult challenge to mount successfully [citation], because an enactment is facially invalid only if no set of circumstances exist under which it would be valid." *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305-06 (2008); see also *People v. Thompson*, 2015 IL 118151 (citing *People v. Garvin*, 219 Ill. 2d 104, 117 (2006)). "The fact that the enactment could be found unconstitutional under some set of circumstances does not establish its facial invalidity." *Napleton*, 229 Ill. 2d at 306. Moreover, even if we were to find that that language of the ordinance is unclear or ambiguous, a court "will resolve any doubt as to the statute's construction in favor of its validity." *People v. One 1998 GMC*, 2011 IL 110236, ¶ 20 (citing *People v. Boeckmann*, 238 Ill. 2d 1, 6-7 (2010)).

¶ 22    We must determine if the $300 fee in Edwardsville's ordinance is rationally related to a legitimate legislative purpose and is neither arbitrary nor unreasonable. *Napleton* 229 Ill. 2d at 307. In *Carter v. Alton*, we stated: "A fee is rationally related to [the interest the ordinance is meant

7

to advance] if the amount charged bears some reasonable relationship to the actual costs it is intended to recoup." *Carter*, 2015 IL App (5th) 130544, ¶ 19. "The fee need not represent the precise costs incurred by the cities, [but] it 'must at least *relate*' to those actual costs." (Emphasis in original.) *Id.* (quoting *Jones*, 223 Ill. 2d at 585).

¶ 23    Grace argues that any fee Edwardsville is entitled to recover must solely relate to the costs incurred by Edwardsville in towing or impounding the vehicle. He argues that the $300 fee is unjustified because Edwardsville does not actually tow or impound the vehicle. The trial court dismissed this argument as illogical and contrary to the plain language of the ordinance because "[t]he Ordinance specifically states that the 'administrative processing fee' of $300 is in addition to 'any towing and storage fees.' " Noting that the actual towing and impoundment is performed by a third party, the court stated that this understanding is supported by the language of the ordinance which "distinguishes the administrative fee to be charged from the fees associated with the actual towing and storage of the vehicle."

¶ 24    Edwardsville's motion to dismiss included an affidavit of its city attorney, Jeffrey S. Berkbigler, which outlined "the facts and circumstances surrounding the decision to enact the Ordinance establishing said administrative fee." He states:

> "At the time said Ordinance was enacted, the Police Chief for the City of Edwardsville, Chief Bedell, had experience with other municipal police departments and had evaluated the costs associated with the arrest and processing of individuals facing certain charges, which charges could also result in the towing of personal vehicles."

Berkbigler concluded by stating that Edwardsville enacted its ordinance "based upon its ability to and with the intention of recovering the administrative costs associated with the towing and impoundment of vehicles under certain circumstances."

¶ 25   The trial court specifically outlined the costs Edwardsville could incur incident to the process of seizing, towing, and impounding motor vehicles involved in the commission of a crime as follows:

> "subduing the driver and/or the passengers who are resisting the officer(s) on the scene and transporting the driver and/or passengers either to a police station or other locations. The process also includes the search and inventory of the vehicle. The cost may include not only the utilization and employment of police officers but other emergency responders such as fire department personnel, including paramedics and ambulance drivers. It may involve public works employees to clear the street, disentangle the vehicle from wreckage, trees, or other infrastructure, and to secure the area. The city personnel must further be cognizant of protecting personal property that may be within the subject vehicle. There may be passengers, children or pets that require special attention from the city personnel in the process of towing and storing the vehicle in question."

As the trial court noted, given the processes involved in the towing and impoundment of vehicles related to the arrest of drivers for certain criminal offenses, the costs incurred could greatly exceed the $300 administrative fee imposed.

¶ 26   Grace argues that Edwardsville would incur most of the costs irrespective of seizing, towing, and impounding a vehicle, and suggested that the only work done by Edwardsville to justify an administrative fee would be related to collecting the $300 fee and issuing a receipt for that payment. The trial court found this argument to be meritless. In support, the court cited to this court's opinion in *Leehy v. City of Carbondale* that stated: "The fee need not represent the exact costs incurred, but it ' "must at least *relate*" to those actual costs.' " (Emphasis in original.) *Leehy*, 2023 IL App (5th) 220542, ¶ 49 (quoting *Carter*, 2015 IL App (5th) 130544, ¶ 18, quoting *Jones*,

9

223 Ill. 2d at 585). The trial court then concluded that because the appellate court found that Carbondale's $400 fee was reasonably related to the costs incurred, the $300 Edwardsville fee "is reasonable and rationally related to the legislative purpose of recovering some of those costs." We agree and find that the fee imposed by this ordinance "bears some reasonable relationship to the actual costs it is intended to recoup." *Carter*, 2015 IL App (5th) 130544, ¶ 19. Grace's argument that the $300 administrative fee was only for collection of the fee and issuance of a receipt is meritless. We find that the administrative processing fee listed in this ordinance substantially correlates to the actual administrative costs incurred by Edwardsville resulting from the arrest. *Id.*

¶ 27    We conclude that Edwardsville's ordinance—designed to recover costs and expenses incurred by its police department in handling criminal investigations that culminate in an arrest, towing, and impoundment of the suspect's vehicle—serves a legitimate purpose and is valid. *Gray*, 2017 IL 120958, ¶ 61 (citing *Village of Lake Villa*, 211 Ill. 2d at 126; *Lumpkin*, 184 Ill. 2d at 124); *Hayashi*, 2014 IL 116023, ¶ 29. We do not find that the ordinance is facially invalid as Grace cannot establish there is "no set of circumstances exists under which it would be valid." *Napleton*, 229 Ill. 2d at 305. The trial court's order dismissing Grace's complaint was appropriate as we find there was no genuine issue of material fact regarding the legitimacy of Edwardsville's impoundment of motor vehicles ordinance. 735 ILCS 5/2-619 (West 2020).

¶ 28                    B. Substantive Due Process

¶ 29    Grace next argues that the trial court erred in finding that he failed to establish a violation of his substantive due process rights. His argument is based on the theory that the ordinance only authorizes Edwardsville to recover administrative expenses for writing or printing the receipt for the fees charged. He argues that the $300 fee for printing a receipt bears no reasonableness to the actual expenses.

10

¶ 30    Substantive due process prevents a governmental body from taking certain action even if it provides appropriate procedural safeguards. *LMP Services, Inc. v. City of Chicago*, 2017 IL App (1st) 163390, ¶ 23 (quoting *In re Marriage of Miller*, 227 Ill. 2d 185, 197 (2007)); *Casanova v. City of Chicago*, 342 Ill. App. 3d 80, 91 (2003). Substantive due process protects certain fundamental rights "that are deeply rooted in our nation's history and traditions." *In re Amanda D.*, 349 Ill. App. 3d 941, 946 (2004) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997)). "When a fundamental right is at issue, governmental action that impairs the right must be narrowly tailored to advance a compelling state interest." *Id.* (citing *Washington*, 521 U.S. at 721). The United States Supreme Court urges the exercise of caution when determining if a legislative action gives rise to a cause of action under substantive due process. *Washington*, 521 U.S. at 720.

¶ 31    The first step in analyzing a substantive due process claim is to "identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). If a state action does not implicate a fundamental right, then it cannot implicate substantive due process. *Idris v. City of Chicago*, 552 F.3d 564, 566 (7th Cir. 2009) (finding that a $90 fine for a traffic infraction, which constituted a property interest, is too modest to implicate a fundamental right).

¶ 32    Grace argues that Edwardsville infringed upon his constitutional right as follows: "The amount chosen for the fee in this case lacks any reasonableness whatsoever, and the City has failed to establish reasonableness." Again, he contends that the $300 fee charged was solely for the costs incurred by Edwardsville in presenting him with the receipt.

¶ 33    The trial court concluded that Grace failed to establish that Edwardsville implicated a fundamental right because the challenge involved only the deprivation of a property interest. *Idris*, 552 F.3d at 566. A valid substantive due process claim necessarily requires a plaintiff to "allege that the decision was arbitrary and irrational and must show either a separate constitutional

11

violation or the inadequacy of state law remedies." *PBM Stone, Inc. v. Palzer*, 251 Ill. App. 3d 390, 394-95 (1993). "[W]hen a substantive due-process challenge involves only the deprivation of a property interest, a plaintiff must show 'either the inadequacy of state law remedies or an independent constitutional violation' before the court will even engage in this deferential rational-basis review." *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003). "[I]n cases where the plaintiff complains that he has been unreasonably deprived of a state-created property interest, without alleging a violation of some other substantive constitutional right or that the available state remedies are inadequate, the plaintiff has not stated a substantive due process claim." (Internal quotation marks omitted.) *New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1481 (7th Cir. 1990).

¶ 34 The trial court ultimately concluded that Grace's substantive due process claim was defeated because he had adequate administrative remedies available to him within Edwardsville's ordinance—to participate in the mandatory administrative hearing. Grace correctly counters that the language of Edwardsville's ordinance only allows the administrative process to address the propriety of the seizure and impoundment and does not allow him to challenge the fee on substantive due process grounds. However, the ordinance outlines a pathway to recover all or part of the $300 fee, which is the relief that Grace desires.

¶ 35 We find that Grace has failed to make a claim of a valid substantive due process violation. Because Grace's substantive due process challenge only involves deprivation of a property interest, he must establish either that state law remedies are inadequate or state an independent constitutional violation. *Lee*, 330 F.3d at 367; *PBM Stone*, 251 Ill. App. 3d at 394-95. We have already concluded that the ordinance could not legitimately be interpreted to mean that the $300 fee was solely for Edwardsville's provision of a receipt. Thus, we do not find that the fee is

arbitrary or irrational. *PBM Stone*, 251 Ill. App. 3d at 394-95. Additionally, Grace has not established a separate constitutional violation or established that there were no adequate state remedies available. *Id.* The trial court's order dismissing his complaint was correct as we agree that at most Grace is claiming deprivation of a property interest, and he failed to establish a substantive due process violation. *Lee*, 330 F.3d at 367. Dismissal was proper as a matter of law. 735 ILCS 5/2-619 (West 2020); *Parks v. Kownacki*, 193 Ill. 2d 164, 175 (2000) (citing *Doyle v. Holy Cross Hospital*, 186 Ill. 2d 104, 109-10 (1999)).

¶ 36                                   C. Voluntary Payment Doctrine

¶ 37    The trial court also found that dismissal of Grace's amended complaint was warranted pursuant to the voluntary payment doctrine, stating that the Edwardsville ordinance contained a method to seek a refund of the fee, and Grace chose not to utilize the legislative remedy.

¶ 38    The voluntary payment doctrine is based in common law. The Illinois Supreme Court explained this doctrine in its 1902 case, *Yates v. Royal Insurance Co.*, 200 Ill. 202, 206 (1902), as follows:

> "The principle is an ancient one in the common law and is of general application. Every man is supposed to know the law, and, if he voluntarily makes a payment which the law would not compel him to make, he cannot afterwards assign his ignorance of the law as the reason why the state should furnish him with legal remedies to recover it back. Money voluntarily paid to another under a mistake of the law, but with knowledge of all the facts, cannot be recovered back." (Internal quotation marks omitted.)

¶ 39    This common law doctrine remains "universally recognized" today. *King v. First Capital Financial Corp.*, 215 Ill. 2d 1, 27-28 (2005). "The rule is that in the absence of fraud, misrepresentation, or mistake of fact, money voluntarily paid under a claim of right to the payment,

13

with full knowledge of the facts by the person making the payment, cannot be recovered unless the payment was made under circumstances amounting to compulsion." (Internal quotation marks omitted.) *Id.* at 30. Unless there is a statute which permits recovery for the payment of these fees "improperly assessed by a municipality or utility," that person is not allowed to recover the voluntarily paid fee. *Getto v. City of Chicago*, 86 Ill. 2d 39, 48 (1981); see also *Alvarez v. Pappas*, 229 Ill. 2d 217, 233-34 (2008) (holding that a taxpayer may not recover taxes voluntarily paid even if the taxing body illegally imposed or assessed the taxes unless the recovery is authorized by statute).

¶ 40    Whether the payment is voluntary presents a moot question if the legislature has provided a statutory remedy for the refund. *Scoa Industries, Inc. v. Howlett*, 33 Ill. App. 3d 90, 96 (1975); *Alvarez*, 229 Ill. 2d at 233-34. "Where *** the legislature has enacted a statutory remedy for a refund, a taxpayer who has voluntarily or involuntarily paid his taxes can recover them only by virtue of that statute." *Alvarez v. Pappas*, 374 Ill. App. 3d 39, 48 (2007).

¶ 41    Here, Grace claims that his payment of the $300 fee was compulsive and made under duress in that his vehicle was taken by Edwardsville and he could not retrieve the vehicle until he paid that administrative tow fee. He argues that if he had refused to pay the fee, he would not have been able to get his vehicle back. In support of his argument, he cites Illinois cases where businesses who were forced to pay money under duress to avoid "disastrous effects to business" could recover that money paid. See *Edward P. Allison Co. v. Village of Dolton*, 24 Ill. 2d 233, 235 (1962) (where the Village of Dolton threatened to shut down the electrical work that was being performed for the village by Edward P. Allison Co., Inc. unless the company paid certain license and inspection fees, the court concluded that the payment of the fees was involuntary); *Illinois Glass Co. v. Chicago Telephone Co.*, 234 Ill. 535, 546 (1908) (where Illinois Glass Company was overcharged for

14

telephone services by the Chicago Telephone Company and did not discover the overcharged amounts until after the expiration of the applicable statute of limitations, Illinois Glass could not recover the wrongful amount paid, and the supreme court stated: "Although the defendant could not legally require payment of more than $125 per year for the business telephone, and the plaintiff was not legally bound to pay more, a larger sum was voluntarily paid without fraud, mistake of fact, or other ground for annulling the contract."). The payments in both cases were not made pursuant to, or otherwise governed by, a statute containing an administrative method to recover the fees. Thus, we find that Grace's argument lacks merit.

¶ 42     Conversely, as noted in *Scoa Industries, Inc.* and *Alvarez*, if there is a statutory remedy for a refund, the only mechanism to recover that fee is compliance with the statute. Section 114-414 of the Edwardsville Code of Ordinances expressly provides an administrative remedy for contesting and potentially recovering the fee:

> "Within ten days after a vehicle is towed/impounded pursuant to this article, the city shall notify the owner of record *** of the date, time, and location of a hearing that will be conducted pursuant to this section. *** The owner will appear at the plea hearing and admit or deny whether there was cause to tow and impound the vehicle for those violations ***. If the owner denies that there was cause to impound the car for violation specific the hearing officer shall set a hearing date no later than 45 days from the date the vehicle was impounded. *** If the hearing officer finds by [the] preponderance of the evidence that the vehicle was not used in connection with the violation set forth in section 114-411 the hearing officer shall order the immediate return of the owner's vehicle or cash bond without towing or impounding fees." Edwardsville Code of Ordinances § 114-414 (eff. May 4. 2009).

Accordingly, we agree with the trial court's conclusion that Grace's claim is barred by the voluntary payment doctrine. 735 ILCS 2-615 (West 2020).

¶ 43                                D. Law of the Case

¶ 44    In the final issue raised on appeal, Grace alleges that the trial court originally denied Edwardsville's previous motion to dismiss, and that the newer motion to dismiss (that was ultimately granted) contained nothing new. He argues that the trial court should not have allowed the relitigation of the previously decided issues pursuant to the law of the case doctrine.

¶ 45    Despite his contention that the motions were similar, Grace acknowledges that Edwardsville made the following changes to its motion to dismiss: added an introduction and procedural history, reworded the facts section, rearranged "several sections," and on pages 15-16 of the motion to dismiss added information "relating to Plaintiff[']s amended portion excluding individuals charged pursuant to 625 ILCS 5/11-501 involving the individuals listed above."

¶ 46    The law of the case is a doctrine that bars relitigation of an issue previously decided in the same case. *Swain v. City of Chicago*, 2014 IL App (1st) 122769, ¶ 9 (quoting *Krautsack v. Anderson*, 223 Ill. 2d 541, 552 (2006)). However, " '[a] trial court order becomes the "law of the case" only if there is a final and appealable order.' " *Id.* (quoting *McDonald's Corp. v. Vittorio Ricci Chicago, Inc.*, 125 Ill. App. 3d 1083, 1087 (1984)).

¶ 47    Here, the trial court's order denying Edwardsville's earlier motion to dismiss was interlocutory, and therefore never became the law of the case. *Id.* ¶ 10 (citing *Clark v. Children's Memorial Hospital*, 2011 IL 108656, ¶ 119 (denial of summary judgment order was interlocutory)); see also Ill. S. Ct. R. 304 (eff. Mar. 8, 2016).

16

¶ 48 To the extent that the two motions to dismiss were similar, we conclude that the trial court's reconsideration of the previous denial of a motion to dismiss was proper, and we therefore reject Grace's law of the case argument.

¶ 49                                    III. CONCLUSION

¶ 50 For the foregoing reasons, we affirm the order of the Madison County circuit court dismissing this case.

¶ 51 Affirmed.

*Grace, Baxter, etc. v. The City of Edwardsville*, 2025 IL App (5th) 240425

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Madison County, No. 11-L-1304, the Hon Ronald S. Motil, Judge, presiding. |

| | |
|---|---|
| **Attorneys for Appellant:** | Donna S. Polinske, Brian L. Polinski, of Edwardsville, for Baxter Grace |

| | |
|---|---|
| **Attorney for Appellee:** | James E. Schrempf, of Alton, for The City of Edwardsville |